# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | |
|---|---|
| ANNETTE WATKINS, as Administrator for the Estate of DAMIAN DANIELS, <br><br> Plaintiff <br><br> v. <br><br> BEXAR COUNTY, SHERIFF JAVIER SALAZAR, DEPUTY JOHN RODRIGUEZ, DEPUTY ENRIQUE CEPEDA, and DEPUTY MICHELLE GARRIFFA, <br><br> Defendants | Civil Action No. 5:22-cv-610 <br><br><br><br> JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

NOW COMES Plaintiff Annette Watkins, as Administrator for the Estate of Damian Daniels, complaining of Defendants Bexar County, Sheriff Javier Salazar, Deputy John Rodriguez, Deputy Enrique Cepeda, and Deputy Michelle Garriffa. Plaintiff respectfully shows the Honorable Court the following:

### NATURE OF THE ACTION

1. Damian Daniels, a United States Army veteran, was experiencing a mental-health crisis on August 25, 2020. His brother, who lived out of state, called the Bexar County Sheriff's Department to request a welfare check at Mr. Daniels's

home.[1]

2. Bexar County Sheriff's Deputies John Rodriguez, Enrique Cepeda, and Michelle Garriffa responded to Mr. Daniels's home. Before arriving, they were informed that Mr. Daniels was an army veteran experiencing a mental-health crisis, but they did not modify their tactical approach to accommodate Mr. Daniels's status when contacting him.

3. To the contrary, Deputies Rodriguez, Cepeda, and Garriffa treated Mr. Daniels as if he were a criminal suspect, despite him breaking no laws and posing no threat to the Deputies.

4. The Deputies' fatal shooting of Mr. Daniels was the product of a series of flawed tactical decisions by Deputies Rodriguez, Cepeda, and Garriffa. The Deputies provoked and escalated a situation that could have been resolved without any harm to Mr. Daniels into his tragic death and a life-changing, traumatic experience to Plaintiff and her family.

5. Deputies John Rodriguez, Enrique Cepeda, and Michelle Garriffa used force against Mr. Daniels without legal justification, and Deputy Rodriguez used lethal force when Mr. Daniels posed no threat to his life.

6. Deputies Rodriguez, Cepeda, and Garriffa's uses of force were unreasonable and therefore violated Mr. Daniels's rights under the Fourth Amendment of the United States Constitution and Texas Law.

---

[1] Mr. Daniels's brother initially called the Red Cross for assistance because he believed it was a mental-health issue, not a law-enforcement issue. However, he was directed to call the Bexar County Sheriff's Office.

7. For these violations, Plaintiff seeks redress and compensation for damages and the wrongful death of Mr. Daniels.

## PARTIES

8. Plaintiff Annette Watkins is the mother of Damian Daniels and the administrator of his estate and an adult individual and a resident of the state of Alabama.

9. Defendant Bexar County is a county duly organized and existing under the laws of the state of Texas and is responsible for the operation of the Bexar County Sheriff's Department including operations, training, discipline, supervision, and screening.

10. Javier Salazar is the duly elected Sheriff and is responsible for the operation of the Bexar County Sheriff's Department including operations, training, discipline, supervision, and screening.

11. Defendant Deputy John Rodriguez was at all relevant times a duly appointed law-enforcement officer acting in the course and scope of his duties with the Bexar County Sheriff's Department. Plaintiff brings suit against him in his individual and official capacity.

12. Defendant Deputy Enrique Cepeda was at all relevant times a duly appointed law-enforcement officer acting in the course and scope of his duties with the Bexar County Sheriff's Department. Plaintiff brings suit against him in his individual and official capacity.

13. Defendant Deputy Michelle Garriffa was at all relevant times a duly

appointed law-enforcement officer acting in the course and scope of her duties with the Bexar County Sheriff's Department. Plaintiff brings suit against her in her individual and official capacity.

### JURISDICTION AND VENUE

14. Jurisdiction exists in this Honorable Court under 28 U.S.C. §§ 1331 and 1343 because Plaintiff brings this action under 42 U.S.C. § 1983 to redress a deprivation of the Fourth Amendment rights of the decedent, Damian Daniels. Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. § 1367 to adjudicate pendent state-law claims.

15. Venue is proper in this Honorable Court because Defendants' constitutional violations and intentional torts and otherwise violative conduct occurred within the Western District of Texas.

### FACTUAL BACKGROUND

16. On August 25, 2020, B.D. (the brother of Decedent Damian Daniels) contacted the Bexar County Sheriff's Office to request a welfare check on Decedent Damian Daniels (Mr. Daniels). Specifically, he requested a Sheriff's Deputy and an ambulance be sent to Mr. Daniels's home.

17. Mr. Daniels, a United States Army veteran who served in Afghanistan, had PTSD and was suffering a mental-health episode.

18. B.D. informed the 9-1-1 operator that Mr. Daniels was suffering with paranoia and experiencing hallucinations.

19. B.D. specifically requested that an ambulance be dispatched in order to provide mental-health treatment and take Mr. Daniels to the hospital.

20. Sheriff's Deputy officers responded to the 9-1-1 call and went to Mr. Daniels's home but did not make contact or engage with Mr. Daniels.

21. B.D. made a second call to 9-1-1 and requested a second welfare check because Mr. Daniels was at his home and prepared to accept help from the Deputies.

22. B.D. never stated that Mr. Daniels was a threat to harm himself or others.

23. Deputies John Rodriguez, Enrique Cepeda, and Michelle Garriffa were dispatched to Mr. Daniels's home.

24. When the Deputies arrived, Mr. Daniels had not committed any crimes, had not been accused of any crimes, and had not indicated that he would harm himself or others.

25. When the Deputies arrived, Mr. Daniels answered the door and stepped on to his porch area.

26. Deputy Cepeda attempted to converse with Mr. Daniels. He informed Mr. Daniels that they were there to conduct a welfare check and asked if he had any medical needs. Mr. Daniels did not respond.

27. Deputy Cepeda then asked Mr. Daniels what was under his shirt. Mr. Daniels did not respond.

28. Deputies Cepeda and Garriffa made several additional attempts to converse with Mr. Daniels, but he remained silent.

29. Deputy Rodriguez called B.D. and informed him that they responded to the request for a welfare check, but that Mr. Daniels was not engaging in

conversation.

30. Deputy Rodriguez acknowledged to B.D. that, because Mr. Daniels had not said that he would harm himself or others, it would be "difficult" to take him in, but they would do their best to talk to him.

31. Deputy Rodriguez then made another attempt to converse with Mr. Daniels and offered to take him to the Veterans Administration Hospital. Mr. Daniels remained silent.

32. Deputies John Rodriguez, Enrique Cepeda, and Michelle Garriffa attempted to engage Mr. Daniels in conversation for over thirty-two minutes. During that time, the deputies encroached closer and closer to Mr. Daniels until they were within a few feet.

33. During the entirety of the time that the Deputies attempted to converse with Mr. Daniels, he did not commit a crime.

34. During the entirety of the time that the Deputies attempted to converse with Mr. Daniels, he did not express or demonstrate that he intended to harm himself or others.

35. During the entirety of the time that the Deputies attempted to converse with Mr. Daniels, he did not engage in any conduct that would justify a seizure by law enforcement.

36. The Deputies took no steps to obtain a warrant to take Mr. Daniels into custody.

37. The Deputies did not inform Mr. Daniels that he was being taken into

custody or why he was being taken into custody.

38. Despite there being no valid justification to do so, the Deputies used physical force against Mr. Daniels to seize him.

39. Deputies Cepeda and Rodriguez, without warning, lunged at Mr. Daniels and grabbed him.

40. Mr. Daniels began sobbing as he was seized.

41. Seconds later, the deputies tazed him for the first of many times.

42. Body-camera footage from the incident reveals that, as Mr. Daniels was tazed, he can be heard screaming in agony.

43. Deputy Cepeda then attempted to reach under Mr. Daniels's shirt, presumably to remove the firearm that Mr. Daniels was legally carrying. Prior to this attempt to take Mr. Daniels's firearm without justification, Mr. Daniels had never motioned or otherwise indicated an intent to use it.

44. Mr. Daniels was then taken to the ground where he was repeatedly tazed.

45. Body-camera footage demonstrates that at no time while on the ground did Mr. Daniels take any threatening actions toward the Deputies.

46. As Mr. Daniels writhed in agony and his body clenched from the electricity shooting through his body, Deputy Rodriguez shot and killed him at point blank range.

47. When Deputy Rodriguez used lethal force, he was not in danger of death or serious bodily injury.

### PRIOR EVIDENCE OF VIOLENT CONDUCT

48. Mr. Daniels is not the first person having a mental health episode that Deputy Rodriguez has killed.

49. In 2010, Deputy Rodriguez fatally shot Jack Barney Butler, a thirty-five-year-old man who was depressed over losing his job.

50. Mr. Butler had been harming himself, but his sister disarmed him prior to Deputy Rodriguez's arrival at his home.

51. Mr. Butler was unarmed when Deputy Rodriguez shot and killed him in his driveway because Deputy Rodriguez claimed he was walking toward him at a fast pace.

52. According to witnesses of the killing, Mr. Butler was sixteen to eighteen feet away from Deputy Rodriguez with his hands up when Deputy Rodriguez.

53. Deputy Rodriguez was not disciplined or retrained by Bexar County after killing Mr. Butler—an unarmed man in mental health distress—in 2010.

54. In 2013, Deputy Rodriguez was arrested and charged with domestic violence.

55. The complainant against Deputy Rodriguez declined to go forward with the prosecution and he returned to work with only a three-day suspension for conduct unbecoming an officer.

### MUNICIPAL LIABILITY

56. Sheriff Javier Salazar has been the Sheriff of Bexar County since he took office in January 2017.

57. As the Sheriff of Bexar County, Sheriff Salazar is the policymaker for

Bexar County in the area of law enforcement.

58. Prior to the killing of Mr. Daniels, Bexar County—through its policymaker, Sheriff Salazar—was aware that its use-of-force policy was deficient.

59. Sheriff Salazar acknowledged that BCSO's use-of-force and officer-involved-shooting policies were wordy and confusing; he said, "[w]hen you start getting into ambiguities in your policy, I think you're asking for trouble."

60. The ambiguities and deficiencies in BCSO's use-of-force policy include, but are not limited, to:

- 60.1. Permitting an individual deputy to use a subjective standard to determine the use of force that the deputy believes is reasonable, instead of utilizing an objective-reasonableness standard;

- 60.2. Failing to require officers to issue a verbal warning prior to using deadly force in contravention of United States Supreme Court precedent;

- 60.3. Failing to clearly and unambiguously require officers to use only measured, ascending, and proportional force;

- 60.4. Failing to adequately inform officers when force can be used to seize persons who have not committed and are not suspected of committing crimes; and

- 60.5. Failing to direct deputies to avoid putting themselves in a position where force or deadly force becomes necessary.

61. The deficient BCSO use-of-force policy led to multiple tortious and/or unconstitutional fatal shootings prior to the shooting of Mr. Daniels, including:

- 61.1. On September 17, 2010, Jack Barney Butler, an unarmed man in his driveway, was shot and killed by Deputy Rodriguez.

- 61.2. On August 28, 2015, Gilbert Flores was shot and killed by two deputies when they opened fire on Flores as he stood motionless in the surrender pose, his feet still stationary.

61.3. On December 21, 2017, Amanda Jones and Kameron Prescott were killed by deputies. Despite Jones and Prescott being unarmed, the deputies discharged their weapons approximately eighteen times.

61.4. On March 9, 2020, an unidentified Bexar County Deputy burst into the home of Jesus Garcia and shot the unarmed man repeatedly.

62. This pattern of officer-involved shootings was known by Sheriff Javier Salazar, who is responsible for the direction, training, supervision, and discipline within the Bexar County Sheriff's Office.

63. Despite this knowledge, Sheriff Salazar failed to implement policies, training, supervision, and discipline to rectify the pattern of unconstitutional shootings.

64. Sheriff Salazar and Bexar County failed to provide adequate training, retraining, and supervision to police officers with respect to constitutional limitations of the use of lethal force.

65. Sheriff Salazar and Bexar County failed to provide training, retraining, and supervision to police officers with respect to modifying tactics to accommodate persons suffering mental-health crises.

66. Sheriff Salazar and Bexar County failed to adequately discipline Sheriff's Deputies following the use of lethal force against unarmed citizens, thus perpetuating the belief amongst police officers that their misconduct will not adversely affect their employment.

### WRONGFUL DEATH ACTION

67. Plaintiff hereby brings wrongful-death claims in the Counts *infra* under Texas Civil Practice & Remedies Code § 71.001 et seq. (the Texas Wrongful Death

Statute), on behalf of all persons entitled by law to recover damages as a result of the wrongful death of Decedent Damian Daniels.

68. No other action has been brought to recover for Mr. Daniels's death under the Texas Wrongful Death Statute.

69. Plaintiff claims all available damages under the Texas Wrongful Death Statute for financial contributions and the loss of future services, support, society, comfort, affection, guidance, tutelage, and contribution that the Plaintiff's decedent, Damian Daniels, would have rendered to the wrongful-death beneficiaries but for his traumatic, untimely, and unnatural death.

70. Plaintiff claims damages for payment for all medical bills and/or expenses, funeral expenses, and burial expenses.

## SURVIVAL ACTION

71. Plaintiff Annette Daniels, Personal Representative of the Estate of Damian Daniels, deceased, also brings survival claims in the Counts described *infra* under the Texas Survival Statute, Texas Civil Practice & Remedies Code § 71.021 et seq. (the Texas Survival Statute), for all damages recoverable under the Statute, including but not limited to loss of income both past and future income potential, as well as pain and suffering prior to death, and for emotional distress suffered by Plaintiffs' decedent, Damian Daniels, from the initiation of the tortious and unconstitutional conduct until his death.

**Count 1: 42 U.S.C. § 1983 Unreasonable Seizure**
*Plaintiff v. Deputy John Rodriguez, Deputy Enrique Cepeda, and Deputy Michelle Garriffa*

72. Plaintiff hereby incorporates all preceding paragraphs as if fully stated

herein.

73. Defendant Deputies Rodriguez, Cepeda, and Garriffa intentionally detained, arrested, and otherwise seized Mr. Daniels without probable cause, without reasonable suspicion, and without legal justification.

74. Defendant Deputies Rodriguez, Cepeda, and Garriffa were acting under color of state law at the time they seized Mr. Daniels.

75. Defendant Deputies Rodriguez, Cepeda, and Garriffa's seizure of Mr. Daniels was unreasonable and therefore in violation the rights guaranteed to him under the Fourth Amendment of the United States Constitution.

76. Defendant Deputies Rodriguez, Cepeda, and Garriffa's unreasonable seizure caused Mr. Daniels to suffer and moreover led to the use of excessive use of lethal force.

**WHEREFORE**, Plaintiff demands judgment in her favor, and against Defendant Deputies Rodriguez, Cepeda, and Garriffa under 42 U.S.C. § 1983, in an amount in excess of $1,000,000 including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful-death damages, exemplary damages as provided by law, attorney's fees under 42 U.S.C. §§ 1985 and 1988, and any other remedies legally appropriate.

**Count 2: 42 U.S.C. § 1983 Excessive Force**
*Plaintiff v. Deputy John Rodriguez, Deputy Enrique Cepeda, and Deputy Michelle Garriffa*

77. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

78. Defendant Deputies Rodriguez, Cepeda, and Garriffa intentionally detained, arrested, and otherwise seized Mr. Daniels without probable cause, without reasonable suspicion, and without legal justification.

79. Defendant Deputies Rodriguez, Cepeda, and Garriffa intentionally used physical force up to and including the use of tazers without probable cause, without reasonable suspicion, and without legal justification.

80. Defendant Deputy Rodriguez used lethal force without justification when he was not in danger of serious bodily injury or death.

81. Defendant Deputies Rodriguez, Cepeda, and Garriffa were acting under color of state law at the time they used force against Mr. Daniels.

82. Defendant Deputies Rodriguez, Cepeda, and Garriffa's use of force was unreasonable and excessive and therefore violated the Fourth Amendment of the United States Constitution.

83. Defendant Deputies Rodriguez, Cepeda, and Garriffa's unreasonable use of force caused Mr. Daniels to suffer pain, agony, and death.

**WHEREFORE**, Plaintiff demands judgment in her favor and against Defendant Deputies Rodriguez, Cepeda, and Garriffa under 42 U.S.C. § 1983, in an amount in excess of $1,000,000 including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful-death damages, exemplary damages as provided by law, attorney's fees under 42 U.S.C. §§ 1985 and 1988, and any other remedies legally appropriate.

**Count 3: 42 U.S.C. § 1983 Municipal Liability**
*Plaintiff v. Bexar County and Sheriff Javier Salazar*

84. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

85. The customs, practices, and policies of Sheriff Salazar and the Bexar County Sheriff's Office were the moving force behind Defendant Deputies Rodriguez, Cepeda, and Garriffa's violations of Mr. Daniels's constitutional rights.

86. Mr. Daniels was deprived of rights and privileges secured to him by the United States Constitution and by other laws of the United States, by the Bexar County Sheriff's Office through its many failures.

87. Bexar County Sheriff Javier Salazar was deliberately indifferent to a constitutionally deficient use-of-force policy.

88. Bexar County Sheriff Javier Salazar had knowledge of the persistent pattern of unconstitutional conduct within the Bexar County Sheriff's Office.

89. Despite this knowledge, Bexar County Sheriff Javier Salazar acted with deliberate indifference and failed to take the necessary steps to rectify the conduct and deficient policies adequately protect the constitutional rights of the citizens of Bexar County.

90. The deliberately indifferent refusal to rectify these deficiencies was a moving force behind the deprivation of Mr. Daniels's constitutional rights.

**WHEREFORE**, Plaintiff demands judgment in her favor, and against Sheriff Javier Salazar and Bexar County under 42 U.S.C. § 1983, in an amount in excess of $1,000,000 including interest, delay damages, costs of suit, general and specific

damages, including both survival and wrongful-death damages, exemplary damages as provided by law, attorney's fees under 42 U.S.C. §§ 1985 and 1988, and any other remedies legally appropriate.

Respectfully submitted,

**AMINI & CONANT, LLP**
408 West 11th Street, Fifth Floor
Austin, Texas 78701
t: (512) 222-6883
f: (512) 900-7967
service@aminiconant.com

By: *R. Alex Conant*
R. Alex Conant
Texas Bar No. 24074061
alex@aminiconant.com
*Local Counsel*

**MCELDREW YOUNG PURTELL MERRITT**

/s/ *Mark V. Maguire*
Mark V. Maguire, Esq.
123 South Broad Street, Suite 2250
Philadelphia, Pennsylvania 19109
(215) 545-8800
(215) 545-8805 (fax)
mmaguire@mceldrewyoung.com
*pro hac vice motion forthcoming*